UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLENN R. CARLSON, ET AL., : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 3:15-cv-01045-MPS |
| v. : | |
| : | |
| ALLSTATE INSURANCE COMPANY : | |
| : | FEBRUARY 2, 2017 |
| Defendant. : | |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S
REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

DEFENDANT,
ALLSTATE INSURANCE COMPANY

Raymond T. DeMeo (ct02189)
Jessica A. R. Hamilton (ct29702)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Phone:  860-275-8200
Fax:  860-275-8299
Email: rdemeo@rc.com
Email: jhamilton@rc.com

**ORAL ARGUMENT REQUESTED**

I.    **<u>INTRODUCTION</u>**

Plaintiffs, in their opposition, largely ignore the unambiguous policy exclusions directly applicable to Plaintiffs' claimed loss, instead relying on generalities and public policy arguments to support their points. But this case is about the interpretation of a written contract, plain and simple. Allstate's motion for summary judgment presents a pure question of law: whether, in light of the undisputed facts, Plaintiffs' property suffered a "collapse" within the limited exception to the general collapse exclusion in the Allstate Policies.[1] While Plaintiffs say that Allstate "made no attempt to define the term 'collapse,'" (ECF No. 41, p. 10), in fact, the Allstate Policies' requirements are quite specific: (1) there must be an "entire collapse" of a building structure; (2) the "entire collapse" must be a "sudden and accidental direct physical loss" caused by one or more of six enumerated perils; and (3) "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF No. 38-1, Exh. A, Torres Aff., Exh. 1, p. 15).

Plaintiffs admit that the deterioration of their concrete "was gradual," but nevertheless claim that the gradual reaction *could have caused* sudden, discrete events throughout the course of the deterioration.[2] (ECF No. 41, p. 12). But Plaintiffs make no attempt to demonstrate that there has been a "sudden and accidental" "entire collapse" that is more than "settling, cracking,

---

[1] As in Allstate's Memorandum in Support of Its Motion for Summary Judgment, the policies issued by Allstate to Plaintiffs from June, 1991 through the present are referred to collectively as "the Allstate Policies." (ECF No. 37-1, p. 1).

[2] The only "discrete events" cited by Plaintiffs are the bulging (or, in Plaintiffs' words, "shifting") of a wall, expressly excluded from the Policy's limited collapse coverage, and "pieces of the concrete wall falling to the floor." (ECF No. 41, p. 12). In relation to the latter, their proffered engineering expert, David Grandpre, testified that he would have to look at his photographs to determine if any pieces of concrete had fallen to the floor, and stated: "substantial pieces had not fallen to the floor. There may have been some pieces." (Exh. A, DeMeo Decl., Exh. 3, D. Grandpre Dep., 45:6-7).

shrinking, bulging or expansion." That is the test of coverage, and the undisputed facts show that Plaintiffs have failed that test.[3]

Plaintiffs attempt to equate Allstate's policy language with the language at issue in *Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246 (1987). But the policy in *Beach* was quite different, and included no requirement that a collapse be "sudden and accidental," a key distinguishing factor. Thus, Plaintiff's discussion of Beach's "substantial impairment of structural integrity" test is inapposite.

Similarly, Plaintiffs claim that the policy requirement of a "sudden and accidental" collapse is somehow ambiguous, offering more than five pages of argument before first mentioning the dispositive Connecticut Supreme Court case on the issue, *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540 (2002), which concludes that "sudden" means "temporally abrupt." Moreover, there is nothing ambiguous about a sudden or abrupt event being triggered by long term deterioration, as Judge Underhill of this Court recently and decisively concluded in a similar concrete deterioration case involving plaintiffs' counsel, *Alexander v. General Ins. Co. of America*, No. 3:16-cv-0059 (D. Conn. 2016).[4]

If this Court concludes, consistent with the Policies' language applied to the undisputed facts, that there was no "sudden and accidental" "entire collapse" that is not cracking or bulging, it should grant Allstate's motion for summary judgment on the breach of contract claim in Count I. Plaintiffs do not dispute that their bad faith (Count II) and CUTPA/CUIPA (Count III) claims

---

[3] While Plaintiffs claim that their foundation walls were "severely compromised," (ECF No. 41, p. 9) both plaintiffs and Mr. Grandpre testified that just before their voluntary replacement those walls continued to perform their essential structural functions, the house was safe to live in, and there was no imminent danger of any wall caving in or falling down. (Exh. A, DeMeo Decl., Exh. 1, G. Carlson Dep., 74:18-75:12; Exh. A, DeMeo Decl., Exh. 2, N. Carlson Dep., 14:10-15; Exh. A, DeMeo Decl., Exh. 3, D. Grandpre Dep., 46:4-15).

[4] A copy of the transcript of Judge Underhill's oral ruling was attached to Allstate's Motion for Summary Judgment as Exhibit D, DeMeo Decl., Exh. 6. A copy of the order granting the motion to dismiss was attached as Exh. D, DeMeo Decl., Exh. 7. Judge Underhill subsequently denied the plaintiffs' Motion for Reconsideration. *See Alexander v. Gen. Ins. Co. of Am.*, No. 3:16-cv-59 (SRU), 2017 U.S. Dist. LEXIS 5963 (D. Conn. Jan. 17, 2017).

must fail if Allstate prevails on Count I.  Even if it does not, as to bad faith, Plaintiffs have offered no evidence of willful or wanton misconduct depriving Plaintiffs of the benefit of the contract, and in any case, Allstate's coverage position is at least "fairly debatable."  Plaintiffs similarly have not produced a shred of evidence to support their CUTPA/CUIPA claim.  Nor can they credibly argue that Allstate's liability is "reasonably clear," as they must to prove their claim under Conn. Gen. Stat. § 38a-816(6)(f).

**II.     ARGUMENT**

### A. Plaintiffs' Claimed Loss Does Not Fall Within the Allstate Policies' Limited Coverage for "Collapse."

As Plaintiffs concede, the "threshold question" in this case is whether the limited exception to the collapse exclusion in the Allstate Policies' Additional Protection section applies to the facts of this case.  (ECF No. 41, p. 7).  The Allstate Policies' grant of coverage applies to "sudden and accidental direct physical loss to property."  (ECF 37-1, p. 11).  That coverage is subject to exceptions and exclusions, including exclusions for loss consisting of or caused by (1) "cracking" of "foundations [or] walls;" (2) "faulty, inadequate or defective . . .materials used in . . . construction;" or (3) "rust or other corrosion."  (*Id*., pp. 12-13).  The Policies also exclude loss caused by or consisting of collapse, "except as specifically provided" in the limited additional protection for collapse.  (*Id.*, p. 12).  Plaintiffs do not challenge the applicability of these general exclusions.  Their entire argument rests on the premise that their foundation walls "collapsed" within the meaning of the Policies' limited coverage for collapse, an exception to the general collapse exclusion. (ECF No. 41, pp. 4-5; 7-18).  "[T]he insured has the burden of proving that an exception to an exclusion reinstates coverage."  *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 788, 67 A.3d 961 (2013).

Plaintiffs argue that Allstate's use of "sudden" in the collapse provision is inconsistent with *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252, 532 A.2d 1297 (1987), because, they say, *Beach* "explicitly rejected the notion that a 'collapse' must involve a sudden or catastrophic event." (ECF No. 41, p. 13). This is an inaccurate characterization of the *Beach* holding. The insurance policy at issue in *Beach*, however, was much different than the Allstate Policies. In *Beach,* the policy provided: "This policy does not insure against loss . . . by . . . settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . **unless . . . collapse of a building . . . not otherwise excluded ensues, then this policy shall cover only such ensuing loss.**" *Beach*, supra, 205 Conn. at 250 (emphasis added). The *Beach* court held that this language did not "unambiguously limit its liability to a 'collapse' of a **sudden** and catastrophic nature." *Id.* at 252 (emphasis added).

Allstate's Policies do what the *Beach* policy did not—they unambiguously limit the scope of its collapse coverage to "sudden and accidental" direct physical losses, and provide that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion."[5] (ECF No. 37-1, p. 12; ECF No. 38-1, Exh. A, Torres Aff., Exh. 1, p. 15). Unlike the policy at issue in *Beach*, a suddenness requirement is written into the Allstate Policies.[6]

---

[5] In contrast, the policy in *Beach* excluded settling, cracking, shrinking, or expansion, but expressly provided for coverage of such losses if collapse "ensued," which the *Beach* court held meant "follows consequentially from excluded activity." *Beach*, 205 Conn at 252. Here, plaintiffs' loss is the cracking and expansion of concrete walls, which is not only generally excluded from coverage, but specifically removed from the Policies' limited coverage for collapse.

[6] Significantly, the *Beach* court noted that if the insurer in that case wanted to rely on a "single facial meaning of the term 'collapse'" it had the opportunity to define the term "to provide for the limited usage it now claims to have intended." 205 Conn. at 251. The case it cites for that proposition, *Nida v. State Farm Fire & Casualty Co*., 454 So.2d 328, 334 (La. App. 1984), involved a slab foundation that had cracked because of earth movement caused by soil shrinkage. Like the Allstate Policies, the policy in *Nida* provided limited coverage for collapse but stated that "collapse does not include settling, cracking, shrinking, bulging or expansion." *Id.* In ruling that no "collapse" had occurred, the court held that that "**property insurance policies extending coverage to direct loss caused by `collapse' of the insured building but excluding loss from settling, cracking, bulging, and the like, have generally been held not to encompass damage to walls, ceilings, and foundations which have in fact settled, cracked, or bulged.**" *Id.* (citation omitted) (emphasis added); *accord Block v. St Paul Fire & Marine*, 742 So. 2d 747, 755 (La App. Ct 1984)**.**

Plaintiffs acknowledge that "[t]here is little doubt that the chemical reaction that caused the damage to the [Property] occurs over years and is gradual in nature." (ECF No. 41, p. 12). Nevertheless, they claim that "the gradual reaction can cause sudden events throughout the course of the deterioration" such as a wall "going from being straight and plumb to shifting inward some increment, or to pieces of the concrete within the wall falling to the floor." (*Id.*)[7] Plaintiffs' attempt to deconstruct a "collapse" into a series of discrete micro-events, while conceding that the process is "gradual in nature," is counter-intuitive. Moreover, on their face, both the bulging of the wall and the alleged fragmenting of cracked concrete fall firmly within the exception to "collapse" within the Allstate Policies for "settling, cracking, shrinking, bulging or expansion." As the court in *Alexander* recognized, where "bulging" and "cracking" are expressly excluded under the definition of collapse in the policy, "it is clear that no collapse has occurred" where the "only allegations of impairment to the structural integrity of the walls are allegations that the walls are 'cracking' or . . . 'bulging.'" *Alexander v. Gen. Ins. Co. of Am.*, supra, 2017 U.S. Dist. LEXIS 5963 at *6.

Plaintiffs next attempt to portray the Policies' collapse coverage as facially ambiguous because certain specified perils that can lead to a collapse—for example, "hidden decay"—can occur "gradually over a period of time." (ECF No. 41, p. 17). Again, this argument is misleading. While "hidden decay" implies a deteriorative process, a *collapse* caused by hidden decay may indeed be a "sudden" event—and only sudden events fall within the scope of the limited coverage for collapse provided in the Allstate Policies. There is nothing ambiguous

---

[7] As noted in footnote 2, Mr. Grandpre did not observe any "substantial" pieces of concrete on the basement floor, and could not say for sure whether there were any at all.

about a "sudden" collapse caused by hidden decay, as Judge Underhill held in *Alexander*. (ECF No. 37-1, pp. 14-17).[8]

As discussed in Allstate's principal brief, under the Connecticut Supreme Court's decision in *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.,* 259 Conn. 527, 540, 791 A.2d 489 (2002), the term "sudden" is synonymous with "abrupt," the term the Court construed in *Alexander*. (ECF No. 37-1, pp. 2, 13). Plaintiffs try to distinguish *Buell,* which construed the phrase "sudden and accidental" in an exception to a pollution exclusion, by arguing that while pollution can occur due to a sudden or gradual release of pollutants, "there is no 'sudden' type of decay." (ECF No. 41, p. 17). Again, Plaintiffs treat the Policies as if they contained a grant of coverage for "hidden decay," rather than an exception to an exclusion for "sudden and accidental" "entire collapse" caused, *inter alia*, by hidden decay. As the Court made clear in *Alexander*, it is not unusual for hidden long-term decay to result in a "sudden" collapse—the beam that finally snaps after being eaten from within for years by termites. (ECF No. 37-1, pp. 15-16).

Plaintiffs cannot escape the holding of *Buell*, articulated in broad terms, that "sudden" in the context of the phrase "sudden and accidental" means "temporally abrupt."[9] Plaintiffs do not

---

[8] Plaintiffs characterize *Alexander* as "irrelevant" because the policy in *Alexander* contains a definition of collapse different than Allstate's (ECF No. 41, p. 17). The relevant portion of the *Alexander* policy, however, limited collapse to an *abrupt* falling down or caving in. Allstate's Policies require, *inter alia*, a "sudden" collapse. Under *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.,* 259 Conn. 527, 540, 791 A.2d 489 (2002), "sudden" and "abrupt" are synonymous. Thus Judge Underhill's holding that an "abrupt" (*i.e.,* sudden) collapse could result from a gradual process of decay is highly relevant to this case. Also like the policy in *Alexander*, the Allstate Policies provide that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF No. 38-1, Exh. A, Torres Aff., Exh. 1, p. 15). Judge Underhill rejected the plaintiff's claim that "bulging" constituted a collapse because "bulging. . .is expressly excluded from the definition" of collapse. (ECF 37-1, p. 14).

[9] Plaintiffs also attempt, without success, to distinguish *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.,* 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011), cited in Allstate's main brief. (ECF No. 41, p. 19). *Nestani*, like *Buell*, interpreted the term "sudden" to mean "temporally abrupt" in the context of a collapse provision that provided, much like Allstate's: "We insure only for direct physical loss to covered property involving the **sudden, entire collapse** of a building or any part of a building." *Id.* at 1161-62 (emphasis added). As to the meaning of "sudden" in this context, *Nestani* is persuasive authority.

allege a "sudden," or temporally abrupt event as the cause of their loss, but rather merely allege "deterioration." (ECF No. 7, Compl., ¶ 12). There is nothing "sudden" or abrupt about a process of deterioration that occurred slowly and incrementally since the first pouring of the foundation concrete.

Plaintiffs cite one Florida case, *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262 (M.D. Fla. 2012) for their argument that the term "sudden" is somehow ambiguous. (ECF No. 41, p. 15). *Kelly,* which has never been cited in another decision for the proposition upon which Plaintiffs rely, involved the question of whether a "collapse" potentially occurred during the applicable policy period. The court denied the insurer's motion for summary judgment, because it found a factual dispute on that issue. The court also stated, without analysis, that the term "sudden" in the policy's collapse provision was ambiguous as applied to hidden decay and hidden insect or vermin damage. This aspect of the *Kelly* decision, unsupported by any analysis, is clearly wrong and directly contrary to Judge Underhill's decision in *Alexander*. As the *Alexander* court held, hidden decay occurring over time may indeed lead to an abrupt, or sudden collapse, and there is nothing ambiguous about that.[10]  (ECF No. 37-1, pp. 15-16).

### B. Allstate Did Not Breach the Implied Covenant of Good Faith and Fair Dealing Because It's Denial of Coverage Was, At Minimum, Fairly Debatable and Did Not Evidence Dishonest Purpose or Malice.

Plaintiffs do not dispute that if Allstate prevails on the breach of contract claim in Count I, it must also prevail on the bad faith claim in Count II. (*See* ECF No. 37-1, p. 18). Nor do they dispute that, as noted in Allstate's main brief (ECF No. 37-1, pp 20-23), an insured cannot

---

[10]Plaintiffs' reliance on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009), is similarly unavailing. The policy in *Dalton*, unlike the Allstate Policies here, did not require that collapse be "sudden." Due to the absence of this language, the court, interpreting New York law, held that, where a policy **did not** specify a "sudden" requirement or otherwise define "collapse," a collapse caused by hidden decay or insect damage did not, as a matter of law, require a "sudden destructive force." *Id*. at 93. In so holding, the Second Circuit further noted in a footnote that a case involving a policy that *was* construed to require a "sudden impact" **would be distinguishable**. *Id*. at 92 n.1. Accordingly, *Dalton* is inapplicable in a case, such as this one, where the requirement of "suddenness" is written into the Policies' coverage.

recover for bad faith if the insurer denies a claim that is "fairly debatable." *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005). At a minimum, the coverage issues at issue here are "fairly debatable," precluding liability for bad faith.

Plaintiffs assert that "the heart" of their bad faith claim is their allegations that Allstate "relied upon clearly inapplicable policy exclusions to deny their claim in an attempt to mislead them into concluding that the claim was not covered." (ECF No. 41, p. 21). At their depositions, however—after they had had an opportunity to prepare, and review their claims with counsel— Plaintiffs could not identify any conduct of Allstate, other than the denial of their claim, with which they took issue. (ECF No. 37-1, p. 21). Now, at the summary judgment stage, Plaintiffs' only evidence of Allstate's "bad faith" is its denial letter, and the allegations of their Complaint. Unlike a Fed. R. Civ. P. 12 (b)(6) motion to dismiss, where only "plausibility" is required, defeating a motion for summary judgment requires not just reliance on the allegations of the pleadings, but the presentation of admissible evidence, which Plaintiffs have utterly failed to do. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986).[11]

Plaintiffs claim that Allstate's denial letter "makes no meaningful attempt to explain the factual basis underlying any of the cited exclusions." (ECF No. 41, p. 24). In fact, the letter does explain the factual basis of the coverage decision, citing the investigative engineer's findings and explaining why the claimed loss was not "sudden and accidental." (ECF 38-3, Exh. C., Erskine Aff., Exh. A, pp. 5-6). The fact that the letter "quote[s] other portions of the Policy without applying them to Plaintiffs' claim, this does not, in itself, mean that such provisions are inapplicable." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879, 2015 U.S. Dist. LEXIS 147823 (D. Conn. Oct. 30, 2015).

---

[11] Significantly, all the cases upon which Plaintiffs rely in support of their bad faith claims are decisions on motions to dismiss. (ECF No. 41, p. 25).

This is not a bad faith case. It is a dispute over a coverage denial. Plaintiffs cite no evidence of malice, ill will, or dishonest purpose, as required to establish bad faith. *Buckman v. People Express, Inc.,* 205 Conn. 166, 171 (1987). Allstate is therefore entitled to summary judgment on Count II.

### C. Allstate Did Not Violate CUTPA by Breaching CUIPA.

As noted in Allstate's main brief, if Allstate is entitled to summary judgment on Plaintiff's breach of contract claim, it is also entitled to summary judgment on Plaintiffs' CUTPA/CUIPA count. (*See* cases cited at ECF No. 37-1, pp. 19-20). Even if this Court does not grant summary judgment on coverage, Allstate's coverage position in this case is, at a minimum, reasonable and fairly debatable, which also precludes liability under CUTPA for violation of CUIPA. (*See* cases cited at ECF No. 37-1, p. 24).

In opposing summary judgment, Plaintiffs do not dispute these points. They offer no argument or evidence to support the cornerstone of their claim under CUTPA and CUIPA, namely that Allstate participated, through ISO, in an "industry wide practice" of denying concrete claims. (ECF No. 7., Compl., ¶ 41). The only provision of CUIPA that Plaintiffs now invoke is Conn. Gen. Stat. § 38a-816((6)(f), which proscribes "not attempting **in good faith** to effectuate prompt, fair and equitable settlements of claims **in which liability has become reasonably clear**." (Emphasis added) (ECF No. 41, pp. 25-26). An insurer, such as Allstate, that has a good faith basis for denying coverage *cannot* be in violation of § 38a-816((6)(f). In several pages of briefing, Plaintiffs do not and cannot assert that "liability has become reasonably clear" in this case, in which Allstate's coverage position is supported by exclusions directly on point,

9

and where its interpretation of the "sudden and accidental" requirement for an "entire collapse" aligns with the Connecticut Supreme Court's decision in *Buell*.[12]

Because Plaintiffs cannot establish that Allstate violated Conn. Gen. Stat. § 38a-816(6)(f) in their own case, they fall short of the much higher hurdle of proving that Allstate did so "with such frequency as to constitute a general business practice," as required to sustain a claim under CUTPA/CUIPA. *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 847 (1994). Plaintiffs list cases in which, they say, Allstate has denied claims "for the same condition affecting [Plaintiffs'] home," but offer no analysis of these cases. (ECF No. 41, p. 26). Plaintiffs further fail to proffer any evidence of the key element of wrongfulness beyond their string cite to these cases involving Allstate denials. While simply reciting other claim denials may be enough to survive a Fed. R. Civ. P. 12 (b)(6) motion to dismiss, where only "plausibility" is required, it does not suffice to defeat a motion for summary judgment, which requires not just reliance on the allegations of the pleadings, but the presentation of admissible evidence. Plaintiffs have failed to sustain their burden of showing that Allstate *wrongfully* denied claims like theirs as a general business practice. Allstate is accordingly entitled to summary judgment on Count III of the First Amended Complaint.

## III.    CONCLUSION

For the foregoing reasons, Allstate respectfully requests that the Court grant its Motion for Summary Judgment on Counts I through III of the First Amended Complaint.

---

[12] Plaintiffs state, cryptically, that "it appears from the other arguments addressed in this memorandum of law, that liability has become reasonably clear or that there are issues of fact with respect to when this clarity may have occurred." (ECF No. 41, p. 25). Plaintiffs do not elaborate on the meaning of this statement, which is not supported by any factual assertions, as required to oppose a Rule 56 motion. *See Voccola v. Rooney*, 136 F. Supp. 3d 197, 204-05 (D. Conn. 2015).

DEFENDANT,
ALLSTATE INSURANCE COMPANY

By:     */s/ Raymond T. DeMeo*
      Raymond T. DeMeo (ct02189)
      Jessica A. R. Hamilton (ct29702)
      Robinson & Cole LLP
      280 Trumbull Street
      Hartford, CT 06103
      Phone:  860-275-8200
      Fax:  860-275-8299
      Email: rdemeo@rc.com
      Email: jhamilton@rc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd of February, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                             _/s/ Raymond T. DeMeo, ct02189_